UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BIANCA DENISE ANDERSON,

                     Plaintiff,               Civil Action No. 22-10027

v.                                   Stephen J. Murphy, III
                                   United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,               David R. Grand
                                   United States Magistrate Judge

                  Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 13)

      Plaintiff Bianca Denise Anderson ("Anderson") brings this action pursuant to 42

U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social

Security ("Commissioner") denying her applications for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the

"Act").  Both parties have filed summary judgment motions (ECF Nos. 12, 13), which have

been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §

636(b)(1)(B).

## I.    RECOMMENDATION

      For the reasons set forth below, the Court finds that the Administrative Law Judge's

("ALJ") conclusion that Anderson is not disabled under the Act is supported by substantial

evidence.  Accordingly, the Court recommends that the Commissioner's Motion for

Summary Judgment **(ECF No. 13)** be **GRANTED**, Anderson's Motion for Summary

Judgment **(ECF No. 12)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. §
405(g), the ALJ's decision be **AFFIRMED**.

## II.   REPORT

### A.   Background

Anderson was 38 years old at the time of her alleged disability onset date of August
7, 2016, and at 5'6" tall weighed approximately 305 pounds during the relevant time
period.  (PageID.140-41, 273, 284).[1]  She graduated from high school and completed
medical assistant training.  (PageID.84, 274).  Anderson worked as a count room attendant
at a casino from 1999 to August 2016.  (PageID.274).  She stopped working after she
suffered a leg injury while stretching on August 7, 2016, breaking her right tibia, fibula,
and ankle.  (PageID.88-89).  Subsequently, however, she returned to her work at the casino,
working for several months before quitting due to pain.  (PageID.120-23).  She now alleges
disability primarily as a result of arthritis, chronic pain from intramedullary nailing in the
right leg, and depression.  (PageID.89-90, 106-08, 273).

After Anderson's applications for DIB and SSI were denied at the initial level on
April 5, 2018 (PageID.174-78, 182-86), she timely requested an administrative hearing,
which was held on May 17, 2019, before ALJ Virginia Herring (PageID.74-139).
Anderson, who was represented by attorney Ryan Williams, testified at the hearing, as did
vocational expert ("VE") Pauline McEachin.  (*Id.*).  On July 19, 2019, the ALJ issued a
written decision finding that Anderson is not disabled under the Act.  (PageID.53-68).  On

---

[1] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which
can be found at ECF No. 8.

June 5, 2020, the Appeals Council denied review.  (PageID.32-36).  After requesting and receiving an extension of time (PageID.38), Anderson filed for judicial review of the final decision on January 5, 2022 (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Anderson's medical record, function and disability reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.    The Relevant Medical Evidence

On August 7, 2016, Anderson lost her balance and fell while propping her leg up on a fence to stretch before exercising, breaking the tibia and fibula in her right leg and her right ankle.  (PageID.402-07).  The next day, she underwent emergent intramedullary nailing of the tibia with cast immobilization.  (PageID.412).  She was discharged from the hospital on August 11, 2016.  (*Id.*).

On August 18, 2016, Anderson returned to the emergency room with worsening right lower extremity pain.  (PageID.429).  A Doppler was performed, which confirmed a posterior tibial vein thrombosis; Anderson was prescribed Xarelto and discharged home. (PageID.431).

Subsequently, Anderson followed up with Benedetto Pellerito, M.D. at Associated Orthopedists of Detroit.  On August 25, 2016, she reported that her ankle pain had been improving since the surgery, and she was placed in a CAM boot and advised to begin partial weight bearing with a walker.  (PageID.522-23).  At that time, Dr. Pellerito believed

3

Anderson would be off work for approximately three months. (PageID.523). Anderson began physical therapy in September 2016, and over the next few months she reported slow improvement, as she progressed from a walker to a cane. (PageID.538-39, 549-50, 563-64). On November 19, 2016, Anderson returned to the emergency room after slipping on a wet bathroom floor and falling backward. (PageID.432-34). X-rays showed that the rods and screws in her right leg were intact, and there was no misalignment. (*Id.*).

On February 2, 2017, Dr. Pellerito noted that Anderson still had trouble standing for more than one hour at a time. (PageID.583). He opined that there was likely a mismatch modularity of the retained hardware versus her bones and advised Anderson to consider having the hardware in her tibia removed. (PageID.584-87). In March 2017, Anderson underwent a second surgery to remove some of this hardware. (PageID.428, 589).

In April 2017, Anderson reported increased mobility, although she was still limited with her range of motion, stairs, and bending. (PageID.591). A month later, her range of motion was normal in the ankle and knee, but she continued to use a cane and walk with an antalgic gait. (PageID.594). In August 2017, Anderson indicated that she had been prescribed a home TENS unit for pain, but it provided little relief. (PageID.595). At that point, though, she was using a cane only occasionally and was released to return to work with no restrictions. (PageID.595-96).

On August 4, 2017, Anderson returned to work, working two consecutive 10-hour shifts. (PageID.598). She reported that the work was "very difficult due to the amount of walking she had to do, and she also had difficulty squatting." (*Id.*). Physical examination demonstrated normal range of motion, and the right lower extremity was neurovascularly

4

intact. (PageID.599). Dr. Pellerito noted that Anderson was to continue working without restrictions and call back if she could no longer do it. (*Id.*). At a follow-up visit in September 2017, it was noted that although Anderson was improving and had less pain, she was unable to work in her normal capacity. (PageID.601-02). Dr. Pellerito took her off work again and referred her to pain management. (*Id.*). At her next orthopedic visit, in October 2017, Anderson had normal range of motion of the knee and ankle; her pain management physician had prescribed Flexeril, which provided some relief, and scheduled epidural injections. (PageID.609-10). Dr. Pellerito noted that Anderson's right lower extremity was stable from an orthopedic standpoint. (PageID.610). Per Anderson's request, however, Dr. Pellerito continued her off work for another month. (*Id.*).

On January 4, 2018, Anderson returned to see Dr. Pellerito. She denied improvement in her knee and ankle pain with additional treatment, including injections. (PageID.614). Her physical examination was unchanged. (PageID.615). Dr. Pellerito explained that there was nothing more that he could do for her from a surgical standpoint, and that her pain management physician felt he could do nothing more as well. (*Id.*). She was given a prescription for work hardening. (*Id.*).

On February 15, 2018, Anderson saw Dr. Pellerito again, reporting some improvement in her pain with work hardening and physical therapy. (PageID.630). She was not using ambulatory support at that time. (*Id.*). The initial work hardening evaluation found that Anderson could work part-time at the light exertional level. (PageID.619).

On March 16, 2018, Anderson underwent a consultative physical examination with Jose Mari Jurado, M.D. (PageID.506-13). At the time, Anderson reported ongoing pain

in her hips, knees, ankles, feet, and upper back after fracturing her right leg.  (PageID.506).

She estimated she could sit for 20-30 minutes, stand for 30 minutes, and walk for 15-20

minutes.  (*Id.*).  On physical examination, she had normal muscle tone in all extremities,

but muscle strength was limited due to pain in the right lower extremity.  (PageID.507).

Anderson was unable to heel walk or toe walk, but she could tandem walk with support,

and she was able to bend, stoop, carry, push, and pull with some balance issues.

(PageID.508).  In his medical source statement, Dr. Jurado opined as follows:

> The patient ambulates without a cane for short distances and with a
> cane for long distances.  Gait is a little bit unsteady, and she complains
> of pain.   Regarding functional ability to work, the patient has
> moderate to severe limitations in weight bearing with balance issues,
> lifting weight limit of no more than 15 [pounds], and requires rest
> periods every 15-20 minutes in an 8-hour period.

(*Id.*).

By April 2018, Anderson was only using her cane on bad days.  (PageID.642).  She

continued to report right ankle and knee pain, however.  A May 2018 CT of the right knee

showed early joint space narrowing and mild spur formation in the medial compartment at

the patellofemoral joint.  (PageID.680).  A CT of the right ankle performed at the same

time demonstrated periarticular subcutaneous edema and a small amount of intra-articular

fluid, but there was no evidence of fracture.   (*Id.*).   An EMG of Anderson's lower

extremities performed on June 22, 2018, showed signs of early sensory polyneuropathy.

(PageID.662).  Nonetheless, Anderson was released to return to full duty work as of August

1, 2018.  (PageID.664).

On September 17, 2018, Dr. Pellerito noted that Anderson had returned to work on

August 4, 2018 and was working four 10-hour shifts per week. (PageID.669). She indicated that, after standing for about 4-5 hours at work, she started to experience pain in her leg. (*Id.*). Dr. Pellerito discussed available treatment options with Anderson, advising her against a third surgery to remove retained hardware because he believed it would do more harm than good. (PageID.670). Dr. Pellerito advised Anderson that she "may need to find another career choice that does not involve as much standing." (*Id.*). Anderson worked between August 2018 and January 2019, but then stopped. (PageID.55, 122-23).

## C.   The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the

7

impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Anderson is not disabled under the Act.  At Step One, the ALJ found that Anderson engaged in substantial gainful activity between August 2018 and January 2019; however, she also found that there was a continuous 12-month period during which Anderson did not engage in substantial gainful activity.  (PageID.55-56).  At Step Two, the ALJ found that, during the relevant period, Anderson had the severe impairments of right distal tibiofibular fracture status post intramedullary nailing, right ankle posterior malleolus fracture, patellar tendinitis of the right knee, arthritis of the right ankle, obesity, depression, and anxiety.  (PageID.56).  At Step Three, the ALJ found that Anderson's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment.  (*Id.*).

8

The ALJ then assessed Anderson's residual functional capacity ("RFC"), concluding that, during the relevant period of time, she was capable of performing sedentary work, with the following additional limitations: could lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; could sit for 6 hours in an 8-hour workday; could stand and/or walk for 2 hours in an 8-hour workday; had to be able to change positions every 30-60 minutes as needed; could occasionally use foot controls with the right lower extremity; could occasionally climb stairs or ramps, but could never climb ladders, ropes, or scaffolds; could occasionally stoop and crouch, but could never kneel or crawl; had to be able to use a cane occasionally for ambulation; had to avoid environments with dangerous machinery and unprotected heights; was limited to simple and routine tasks; and could have occasional contact with others, i.e., the public, coworkers, and supervisors. (PageID.58).

At Step Four, the ALJ found that, during the relevant period of time, Anderson was not capable of performing any of her past relevant work. (PageID.66). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Anderson was capable of performing the jobs of general office clerk (150,000 jobs nationally), inspector (130,000 jobs), and bench assembler (150,000 jobs). (PageID.67). As a result, the ALJ concluded that Anderson was not disabled under the Act during the relevant period of time. (*Id.*).

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute

is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.   Substantial evidence …  is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing

in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**E.     Analysis**

As set forth above, the ALJ found that, during the relevant period of time, Anderson had the RFC to perform a reduced range of sedentary work.[2]  (PageID.58).  Before this Court, Anderson argues that the ALJ erred in (1) evaluating the medical opinion evidence; and (2) failing to consider whether she was entitled to a closed period of disability benefits. (ECF No. 12-1, PageID.788-96).  Each of these arguments is addressed below.

*1.     The ALJ Properly Considered the Medical Opinion Evidence*

The regulatory criteria for weighing medical opinions with respect to claims, like Anderson's, filed on or after March 27, 2017, is set forth at 20 C.F.R. § 404.1520c.[3] Specifically, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …." 20 C.F.R. § 404.1520c(a).  Rather, ALJs must consider medical opinions "using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.*  These factors include:

---

[2] Because Anderson challenges only the ALJ's evaluation of her physical impairments, the Court will focus its analysis on evidence pertaining to these conditions.

[3] The administrative regulations pertaining to DIB are contained in 20 C.F.R. Part 404, whereas the SSI regulations are contained in 20 C.F.R. Part 416.  Because the DIB and SSI regulations essentially mirror each other, the Court will cite only the DIB regulations herein.

(1)   Supportability.   The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2)   Consistency.   The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

(3)   Relationship with the claimant.   This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section … [which include length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship].

(4)   Specialization.   The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5)   Other factors.   We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding.

20 C.F.R. § 404.1520c(c).   The most important factors in this analysis are a medical opinion's supportability and consistency with other sources in the record.   20 C.F.R. § 404.1520c(b)(2).   Therefore, ALJs are required to explain how they considered the supportability and consistency factors for a medical source's medical opinions in the determination or decision.   *Id.*

In this case, the ALJ considered and discussed the March 2018 opinion of the consultative examiner, Dr. Jurado.   (PageID.63-64).   As set forth above, Dr. Jurado opined as follows with respect to Anderson:

12

> The patient ambulates without a cane for short distances and with a cane for long distances.  Gait is a little bit unsteady, and she complains of pain.   Regarding functional ability to work, the patient has moderate to severe limitations in weight bearing with balance issues, lifting weight limit of no more than 15 [pounds], and requires rest periods every 15-20 minutes in an 8-hour period.

(PageID.508).  The ALJ found this opinion unpersuasive,[4] explaining:

> Dr. Jurado's opinion is not supported by the objective evidence and it is inconsistent with other evidence in the file.   The claimant demonstrated normal range of motion in her lumbar spine, ankles, shoulders, hips, wrists, and elbows.  It seems Dr. Jurado's opinion relies heavily on the claimant's subjective complaints of pain. However, a review of the entire record demonstrates improvement in the claimant's condition since surgery.  The claimant presented at the hearing without a cane.  She returned to work, albeit briefly, and stood on her feet for 10 hours.  This is in excess of any limitation Dr. Jurado provided.  Finally, the claimant is able to engage in a wide range of daily activities inconsistent with Dr. Jurado's opinion, such as driving, grocery shopping, and washing laundry.

(PageID.64).   Anderson now argues that the reasons articulated by the ALJ for deeming Dr. Jurado's opinion unpersuasive are "insufficient," which the Court construes as an argument that those reasons are not supported by substantial evidence.   The Court disagrees.

To begin with, the ALJ reasonably determined that this opinion appeared to be based not on *Dr. Jurado's* objective findings, but on Anderson's subjective allegations of pain. (PageID.64).  Specifically, Dr. Jurado documented Anderson's reports that she could sit

---

[4] Although the ALJ found Dr. Jurado's opinion was overall unpersuasive, she limited Anderson to standing/walking only 2 hours a day, lifting no more than 10 pounds, and occasionally using a cane for ambulation, in addition to other limitations.  (PageID.58).  Accordingly, the RFC included restrictions for moderate-to-severe limitations in weight bearing, the use of a cane, and lifting no more than 15 pounds.  Only the limitation for frequent rest periods was excluded.

and stand for no more than 30 minutes and walk only 15-20 minutes – the exact same amount of time after which Dr. Jurado opined Anderson would require a rest break. (PageID.506, 508).

The ALJ also explained that after surgery, Anderson's condition improved (PageID.64), thus supporting her finding that the limitations imposed by Dr. Jurado were inconsistent with other medical and nonmedical evidence.   *See* 20 C.F.R. § 404.1520c(c)(2).   For example, by May 2017, Anderson's range of motion was normal in the ankle and knee, but she continued to use a cane and walk with an antalgic gait. (PageID.594).   By August 2017, although Anderson was still experiencing discomfort, she was using a cane only occasionally and was released to return to work with no restrictions. (PageID.595-96).   The ALJ noted that, during the January 2018 initial function testing through the Work Hardening/Conditioning Program, Anderson demonstrated that she could walk on an occasional basis without an assistive device.   (PageID.61, 620).   The ALJ also noted that in February 2018, just before the consultative examination with Dr. Jurado, Anderson was walking without a cane.   (PageID.61, 630).   The ALJ further noted that Anderson was able to sit for an hour before needing a change of position.   (PageID.61, 622).   In March 2018, Anderson demonstrated that she could lift 20 pounds, occasionally walk, and frequently sit.   (PageID.634).   A month later, she reported only using her cane on bad days.   (PageID.642).   Her functional capabilities increased over time, and Dr. Pellerito released her to return to work without any restrictions in June 2018. (PageID.652).   Indeed, she returned to her prior job as a counter at a casino, working 10-hour shifts four days a week from August 2018 through January 2019.   (PageID.79, 669).

14

The ALJ also explained that Anderson's ability to perform a wide range of daily activities was inconsistent with Dr. Jurado's opinion.  (PageID.64).  Anderson took her children to school two or three days a week and then brought them to their extracurricular activities every afternoon, not returning home until almost 8:00 p.m. some nights.  (PageID.83, 102-05).  She testified that she could grocery shop for 30 minutes at a time.  (PageID.132-33).  She also reported that she could wash two to three loads of laundry per day, sweep when needed, and run the dishwasher.  (PageID.288).  The ALJ reasonably concluded that Anderson's daily activities were inconsistent with needing a break every 15-20 minutes.[5]  Thus, the ALJ properly considered both the supportability and consistency factors when assessing Dr. Jurado's opinion and did not err when excluding rest breaks from the RFC.[6]

In her motion, Anderson argues that the ALJ ignored objective medical evidence supporting greater restrictions in her functioning.  (ECF No. 12-1, PageID.791-93).  The Court disagrees.  The ALJ spent three paragraphs discussing Dr. Jurado's objective

---

[5] In her motion, Anderson points to her reported daily activities from September 2016, prior to her second surgery, as evidence that her activities of daily living were overstated.  (ECF No. 12-1, PageID.793) (citing PageID.525-26).  Yet, she ignores her later statements that she was able to care for her children, grocery shop for 30 minutes at a time, and perform various household tasks.  (PageID.83, 102-05, 132-33, 288).

[6] In her motion, Anderson points to evidence supporting Dr. Jurado's opinion.  (ECF No. 12-1, PageID.790-92).  As set forth above, however, the ALJ only excluded the limitation for rest breaks every 15-20 minutes, and Anderson cites to no evidence supporting the need for such frequent breaks.  Indeed, she worked 10-hour shifts (that involved standing and walking for at least nine of those hours) for six months during the relevant period.  (PageID.121).  Moreover, under applicable standards, if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip*, 25 F.3d at 286.

findings and opinion, which included acknowledging limited muscle strength in her right lower extremity and absent sensory perception in the left foot.  (PageID.63-64).  The ALJ also discussed other medical evidence in the record, acknowledging Anderson's 2016 injury, her subsequent surgeries, and her continued reports of pain.  (PageID.59-62).  And, the ALJ discussed other objective findings in the treatment records, such as evidence of swelling, tenderness, decreased range of motion, and an antalgic gait.  (*Id.*).  Thus, the ALJ did not improperly "ignore significant competing evidence," as Anderson asserts.  (ECF No. 12-1, PageID.792) (citing *Yarborough v. Comm'r of Soc. Sec.*, No. 20-12286, 2022 WL 351073 (E.D. Mich. Jan. 18, 2022)).

In summary, Anderson fails to cite to any medical or other evidence indicating that she required a break every 15-20 minutes, as opined by Dr. Jurado.  Rather, the objective evidence shows that her functioning improved with continued treatment, to the point where she worked at the substantial gainful activity level – performing heavy exertional work with only one break per day – for a period of a few months.  (PageID.55, 66, 121).  Therefore, the Court finds no error in the ALJ's evaluation of Dr. Jurado's opinion.

Anderson also briefly challenges the ALJ's evaluation of the "work hardening reports/opinions" of physical therapist Christine Gavel and the opinion of state agency reviewing physician Thomas Flake, M.D.  (ECF No. 12-1, PageID.794-95).  Both challenges lack merit.

With respect to PT Gavel, Anderson argues that the ALJ did not address all of her reports, particularly those that limited her to part-time work.  (*Id.*, PageID.794).  But, an ALJ need not address every piece of evidence in the record in her decision.  *See Kornecky*,

16

167 F. App'x at 508.  Moreover, PT Gavel's statements that Anderson could perform reduced shifts, or return to part-time work at her prior job, are inherently neither valuable nor persuasive, as they are not statements regarding specific functional limitations, but rather relate to the issue of disability, which is reserved to the Commissioner.  *See* 20 C.F.R. § 404.1520b(c)(3)(i) (statements that you are or are not able to work, or able to perform regular or continuing work, are statements on issues reserved to the Commissioner).  And, fundamentally, PT Gavel's records demonstrate that Anderson was capable of performing sedentary work – including standing/walking occasionally, sitting frequently, and lifting no more than 10 pounds (PageID.628, 634, 640, 649, 658-59, 666) – which directly squares with the ALJ's RFC finding.

Similarly, Anderson takes issue with the ALJ's reliance on the opinion of non-examining state agency physician Dr. Flake, who reviewed all of the available medical evidence in April 2018 and found, in relevant part, that Anderson could perform sedentary work with the use of a hand-held assistive device for ambulation, and had to have the ability to alternate between sitting and standing every 30-60 minutes.  (PageID.162-63).  The ALJ found Dr. Flake's opinion persuasive, explaining that he supported his opinion with objective evidence, and it was consistent with the other evidence of record.[7]  (PageID.64).

Anderson argues that Dr. Flake's opinion cannot support the RFC assessment because Dr. Flake did not review Dr. Pellerito's treatment notes.  (ECF No. 12-1,

---

[7] The RFC is consistent with Dr. Flake's findings, although the ALJ determined that Anderson only required the use of a cane occasionally, since she reported using a cane on no more than an occasional basis.  (PageID.58, 111, 642).

PageID.794).   Anderson's argument fails to appreciate that an ALJ can rely on a state agency physician's opinion where there is "some indication" that the ALJ at least considered the new evidence before giving greater weight to an opinion that is not based on a review of a complete case record.  *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).   Here, the ALJ discussed Dr. Pellerito's notes in detail and explained that the records generated after Dr. Flake's review showed that Anderson did not require a cane at all times.  (PageID.60-62, 64).   Moreover, Anderson fails to explain what additional limitations were warranted based on Dr. Pellerito's records, which is fatal to her argument.  (ECF No. 12-1, PageID.794-95).  *See Turvey v. Comm'r of Soc. Sec.*, No. 12-12388, 2013 WL 3271194, at *5 (E.D. Mich. June 27, 2013) (rejecting the plaintiff's challenge to the RFC assessment where he did not "specify any additional work-related functional limitations the ALJ should have, but did not, include in the RFC assessment").   Indeed, Dr. Pellerito released Anderson to her previous job without any restrictions multiple times.  (PageID.596, 652).   For all of these reasons, Anderson has not shown any error in the ALJ's reliance on Dr. Flake's opinion in particular, or in her evaluation of the medical opinion evidence in general.

### 2. *Anderson Did Not Establish Entitlement to a Closed Period of Benefits*

Anderson also argues that the ALJ erred when she "failed to consider a closed period of disability."   (ECF No. 12-1, PageID.796).   Specifically, Anderson asserts that she suffered from ongoing right lower extremity pain, weakness, and instability following her injury in August 2016.   (*Id.*, PageID.795).   She claims she was "significantly limited

through 2018, and her treating orthopedist found she should remain out of work until she attend[ed] a work hardening program for the first half of 2018." (*Id.*). According to Anderson, there were "almost two years" between her injury and when she returned to work on a full-time, competitive basis on August 4, 2018. She argues that the ALJ erred in failing to consider whether she was disabled for at least twelve consecutive months at any point during that time and, thus, entitled to a closed period of disability. (*Id.*, PageID.795-96). The Court disagrees.

To begin with, contrary to Anderson's assertions, the ALJ explicitly determined that Anderson was not entitled to a closed period of disability. Indeed, she stated: "While the residual effects of the claimant's injuries have lasted 12 months, they **have not been disabling for a continuous period of 12 months**." (PageID.59) (emphasis added). The ALJ further explained that the record reflected improvement in Anderson's condition as early as December 2016 – four months after her injury. (PageID.65). The ALJ noted that, at that time, Anderson was able to walk with a cane and carry small objects, which would support a sedentary RFC. (*Id.*). Thus, Anderson's assertion that the ALJ "failed to consider a closed period of disability" is simply incorrect.

Moreover, Anderson is mistaken that simply because she did not return to her previous job until August 2018, she was disabled prior to that time. In order to establish disability, she must demonstrate that her impairments rendered her unable to engage in *any* substantial gainful activity for at least a 12-month period. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). It is not enough that she could not perform *her own prior work* for 12 months. Additionally, Dr. Pellerito cleared Anderson to return to her previous job without

any restrictions on August 3, 2017 – less than twelve months after her injury. (PageID.596).  Although Anderson was unable to maintain her prior employment at that time, her job was at the *heavy* exertional level, and the ALJ limited her to a reduced range of *sedentary* work.  (PageID.58).  Thus, Anderson has not established that she was entitled to a closed period of disability.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision should be affirmed.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 13)** be **GRANTED**, Anderson's Motion for Summary Judgment **(ECF No. 12)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: November 15, 2022                         s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge

### <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. L.R. 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and

Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. L.R. 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 15, 2022.

s/Michael E. Lang
MICHAEL E. LANG
Case Manager
